Lowery *v.* International Brotherhood of Boilermakers, Iron Shipbuilders and Helpers of America, et al.

Nos. 41857, 41858 May 29, 1961 130 So. 2d 831

*Albert Sidney Johnston, Jr.,* Biloxi; *Karl Wiesenburg,* Pascagoula, for appellant.

*Clif. Langsdale,* Kansas City, Mo.; *Mize, Thompson & Mize,* Gulfport, for appellees.

RODGERS, J.

On October 28, 1953, Walter S. Lowery, Jr., filed a suit in the U. S. District Court, Southern District of Mississippi, against The International Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America, et al., in which he sought to be reinstated as a Member of Local 693 of the International Brotherhood; and damages for wrongful suspension or expulsion. The U. S. District Court dismissed the cause of action for want of jurisdiction.

Later, within one year, appellant Lowery filed an attachment suit in the Chancery Court of Jackson County against the appellee, International Brotherhood, and Local No. 693, the Ingalls Shipbuilding Corporation, and the Merchants & Marine Bank of Pascagoula, garnishee-defendants. This cause was removed to the U. S. District Court where it was dismissed on the ground that action was barred by the statutes of limitation of Kansas and Mississippi. The case was then appealed to the U. S. Circuit Court of Appeals, Fifth Circuit, where it was reversed. 220 F. 2d 546.

While the above case was on appeal to the appellate court, the appellant filed a second suit in attachment in the Chancery Court of Jackson County, Mississippi, against the same parties, requesting that the court reinstate him to his former membership and award damages for his wrongful suspension. The case was then removed to the Federal District Court where the two cases were consolidated. Both cases were then heard as one and were dismissed. The consolidated cases were then appealed to the U. S. Federal Circuit Court of Appeals, Fifth Circuit, and were there reversed because a diversity of citizenship did not initially exist, and it was held that the jurisdiction was vested in the state court. The consolidated cases were then submitted by agreement to the Chancery Court of Jackson County, Mississippi. It was there agreed and stipulated by the

parties that the evidence and exhibits introduced upon the trial of the cases in the Federal District Court would constitute a part of the record in the Chancery Court. The Chancellor, having heard the testimony, entered a decree on the 10th day of June 1960, dismissing the case on its merits and dismissed the garnishments. The appellant Lowery appealed to this Court from the decree of the Chancery Court.

The appellant was a Member of The International Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America, and of Local Lodge No. 693, until October 29, 1947. Chas. J. McGowan, President of the above-mentioned International Brotherhood, wrote a letter to appellant on the aforementioned date, suspending him from membership in the International Brotherhood, under the provisions of Section 9, Article XV, Subordinate Lodge Constitution. This letter set out certain complaints and advised appellant that there was a complete file of his activities on the President's desk. He was also advised that he could appeal to the International Executive Council under Section 7, Article I, International Lodge Constitution. The appellant notified the President by letter dated November 13, 1947, that he desired to appeal. He was then advised by Mr. McGowan that the International Executive Council would convene at the Stevens Hotel, Chicago, Illinois, on April 5, 1948, and that he would be given an opportunity to be heard. The appellant appeared before the Council at their Chicago meeting, and after a full hearing, the Executive Council affirmed the action of the President. The appellant was then advised that he could appeal to the International Brotherhood which would convene in convention at the Mt. Royal Hotel, Montreal, Quebec, Canada, May 2, 1949, but he did not appeal. He filed instead the aforementioned actions.

The first question to be determined is whether or not the President of the International Brotherhood of Boil-

ermakers, Iron Ship Builders and Helpers of America, had authority to suspend the appellant.

The Constitution and By-laws of the Union which were in force at the time the appellant was suspended by the President were adopted at the convention held in Kansas City, Missouri, January 31, 1944. The pertinent provisions are: ARTICLE I. "Power—Section 3. The powers of the International Brotherhood, while in session, shall be legislative, judicial and executive."

ARTICLE I. "Executive and Judicial Authority— Section 5. The Executive and Judicial Powers only, of the International Brotherhood when not in session, shall be vested in an International Executive Council of the International Brotherhood, which shall consist of the International President, Assistant International President and all of the International Vice-Presidents."

ARTICLE I. "Supervision and Meetings of Executive Council—Section 7. The International Executive Council shall have supervision over the Order when the International Brotherhood is not in session. Its meetings shall be held annually, unless conditions warrant special meetings. They shall have the power to pass on any subject, proposition or grievance, hear and determine all cases on appeal from the decisions and rulings of the Subordinate Lodges, or against any Officer of this International Brotherhood or appointed Officer, and all decisions of the Executive Council shall be final and in full force until reversed by the International Brotherhood in Convention assembled."

ARTICLE IV. "Duties of International Officers. President.—Section 1. The International President shall countersign all orders for payment of money. He shall be empowered to suspend Subordinate Lodge meetings, appoint officers pro-tem of both the International Brotherhood and of Subordinate Lodges and all committees * * * He shall have the direction and supervision of all Subordinate and District Lodges, and be empowered to

suspend their individual members * * * when in his judgment the action of such member, * * * (is) in violation of the International Constitution * * * or in violation of the declared policies of our International Brotherhood."

It will be observed that all that is required under the constitution provisions is that the president determine whether or not a member has violated the International Constitution. If in his judgment a member has violated the constitution or policies of the International Brotherhood, the president may suspend such member. In the event of an emergency, the president may exercise such authority without securing the advice of the Executive Council. (Article IV, Sec. 4). If there is no emergency, the president is required to secure the advice of the Executive Council. (Article IV, Sec. 3). Any member who is suspended shall have the right of appeal to the International Executive Council, and if dissatisfied may thereafter appeal to the International Convention. (Article IV, Sec. 5).

The testimony in this case supports the decree of the chancellor insofar as the procedure of the President is concerned. The president obtained the advice of the International Council before he wrote the letter of suspension. Complaint had been made to the President by Cecil S. Massey, an International Vice-President, dated September 17, 1947, in which he detailed a number of instances of misconduct on the part of appellant and recommended that membership be revoked. Later he renewed the recommendation of revocation of membership.

■■ It is now a well-settled rule that a Union Constitution is a contract between the members of the union and the association. "The articles of agreement of a labor union, whether called a constitution, charter, by-laws, or any other name, constitute a contract between the union and its members, as well as a contract be-

tween the members of the union, which the courts will enforce, if not immoral or contrary to public policy or the law of the land. A labor union has the right to make and adopt reasonable by-laws governing the conduct of its own members. So long as the by-laws of a union relate to matters in which no one except the association and its members is interested, and violate no right of a third person and no rule of public policy, they are valid. * * *'' 31 Am. Jur. 415-416, Labor, Sec. 33. "* * * The contract of association is usually embodied in an instrument corresponding to the corporate charter or articles of incorporation, known as the constitution or articles of association, which, with the bylaws adopted by the organization, governs the powers, rights, duties, and liabilities of the members and the society. * * *'' 4 Am. Jur. 459, Sec. 6.

██ █ The Chancery Court of Jackson County had jurisdiction to try this case as an attachment in chancery, wherein it was alleged that there were funds or property in the hands of a third party belonging to the appellee. Miss. Code 1942, Sec. 2729, Recompiled. ██ A nonresident association or union of individuals may be treated as a nonresident corporation for the purpose of process in this State. Brotherhood of Railroad Trainmen v. Agnew, 170 Miss. 604, 155 So. 205. ██ █ It has been a long-established rule of law in this State that an attachment suit will lie in chancery to seize by attachment or garnishment personal property in the hands of a third party which belongs to a nonresident corporation. Universal Credit Company v. Linn Motor Co., 195 Miss. 565, 15 So. 2d 694; Clark v. Louisville & N. R. Co., et al., 158 Miss. 287, 130 So. 302; Coahoma County Bank & Trust Co., et al. v. Ira S. Feinberg (not yet reported.)

In the case of International Association of Machinists, et al. v. Gonzales, 356 U. S. Reports 617, where a former member of a union sued in a California State

Court for restoration of membership, and for damages for illegal expulsion, in affirming a judgment of the state court which reinstated the member and awarded damages for illegal expulsion, the Court said: "The crux of the claim sustained by the California court was that under California law membership in a labor union constitutes a contract between the member and the union, the terms of which are governed by the constitution and by-laws of the union, and that state law provides, through mandatory reinstatement and damages, a remedy for breach of such contract through wrongful expulsion. This contractual conception of the relation between a member and his union widely prevails in this country and has recently been adopted by the House of Lords in *Bonsor v. Musicians' Union,* (1956), A. C. 104. It has been the law of California for at least half a century. See *Dingwall v. Amalgamated Ass'n* of *Street R. Employees,* 4 Cal. App. 565, 88 P. 597. Though an unincorporated association, a labor union is for many purposes given the rights and subjected to the obligations of a legal entity. See *United Mine Workers v. Coronado Coal Co.,* 259 U. S. 344, 383-392; *United States v. White,* 322 U. S. 694, 701-703.

"That the power of California to afford the remedy of reinstatement for the wrongful expulsion of a union member has not been displaced by the Taft-Hartley Act is admitted by petitioners. * * * But the protection of union members in their rights as members from arbitrary conduct by unions and union officers has not been undertaken by Federal law, and indeed the assertion of any such power has been expressly denied. * * * Thus, to preclude a state court from exerting its traditional jurisdiction to determine and enforce the rights of union membership would in many cases leave an unjustly ousted member without remedy for the restoration of his important union rights. Such a drastice result, on the remote possibility of some entanglement with the

Board's enforcement of the national policy, would require a more compelling indication of congressional will than can be found in the interstices of the Taft-Hartley Act. See *United Constr. Workers v. Laburnum Constr. Corp.*, 347 U. S. 656. * * * 'The state court proceedings deal with arbitrariness and misconduct visa-a-vis the individual union members and the union; the Board proceeding, looking principally to the nexus between union action and employer discrimination, examines the ouster from membership in entirely different terms.' "

The dissenting opinion in the above-mentioned case of Chief Justice Warren and Mr. Justice Douglas to the effect that, when the Congress has expressed its judgment on a desirable scope of regulation, a state action to supplement it is as "conflicting", offensive and invalid as state action in derogation, was not accepted by the majority of the Court.

■■ The jurisdiction of the state court to act in a local dispute between a labor union and one of its members is no longer questionable. The state court not only has the authority to act in a case where it is alleged that a union member has been unlawfully expelled, but it is the duty of the court to do so.

The right of citizens to organize themselves into societies, clubs, guilds, crafts, religious organizations, and labor unions, is said to be one of the "fundamental rights" which existed not only before the enactment of the National Labor Relations Law (Sec. 33, Labor, 31 Am. Jur. 851, 1940 Ed.), but long before the existence of the Magna Charter and the Constitution. History reveals to us that as early as the Sixth Century B. C., Pythagorean Associations existed throughout the Greek world. It is very probably true that men established government by first organizing themselves into tribes. Moreover, membership in an association can be, and very often is, a valuable right. Rights can only be protected in the courts, and the Constitution requires

that the courts shall remain open to every person for an injury done him in his lands, goods, person, or reputation, and he shall have remedy by due process of law, and right and justice shall be administered without sale, denial, or delay. Miss. Constitution 1890, Sec. 24.

■■ ■ It is well-settled law that clubs and societies, including labor unions, have the right to establish their own rules, and qualification for membership. United Brotherhood of Carpenters and Joiners of America v. Carpenters Local Union No. 14 of United Brotherhood of Carpenters and Joiners of America, 178 S. W. 2d 558.

"Clubs and societies, whether religious, literary, or social, have the right to make their own rules upon the subject of the admission or exclusion of members, and these rules may be considered as articles of agreement to which all who become members are parties. Accordingly, an association has the right to prescribe the rules and regulations defining the qualifications of members, and may impose such terms and conditions upon membership, not contrary to law, as it may choose; members must comply with those terms and conditions in order to be entitled to the benefits of membership. Such conditions apply as well to existing as to prospective members. However, an association may by its action be estopped to deny that one is a member therein, notwithstanding failure to comply with conditions of membership." 4 Am. Jur. 462, Associations and Clubs, Sec. 12.

"It is generally held that by becoming a member of a voluntary association, one engages to be bound by its rules, subjects himself to its discipline, and assumes, of necessity, such obligations as are incident to membership, as, for example, the obligation to pay the dues and assessments prescribed by the articles of association as necessary to defray expenses." 4 Am. Jur. 463, Associations and Clubs, Sec. 13.

This contract with the association is binding on members to pay dues, and upon failure so to do, suit may

be brought on the agreement. 4 Am. Jur. 465, Sec. 16. Anderson v. Amidon, 114 Minn. 202, Ann. Cas. 1912B, 987.

We can therefore safely say that the parties in this case contracted to give the President of the Union authority to suspend appellant from membership, subject to the action of the Executive Council.

 █ The authorities seem to hold fairly uniformly that the courts will not intervene except for fraud perpetrated upon a member, or lack of jurisdiction. ''It is well established that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud or lack of jurisdiction. * * * The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion, or arbitrariness, be accepted by the courts as conclusive. Moreover, it is held that the courts will not undertake to inquire into the regularity of the procedure adopted and pursued by such tribunals in reaching their conclusions.'' 4 Am. Jur. 466, Associations and Clubs, Sec. 17.

The courts will, however, grant relief where property rights are involved or where there is not a provision for a hearing under the contract, and will determine whether or not a hearing was contrary to natural justice or was had without proper notice. ''When property rights of members of voluntary associations are involved, the courts will lend assistance for their protection. The compensatory remedies of a member against an association which denies him some property right to which he is entitled are the same as if he were entitled to the same right or property from a natural person or a private corporation which refused to concede it. If a member has become entitled to specific property, real or personal, his right thereto can be enforced against the association by replevin, ejectment, or any other appropriate action or proceeding. A court of equity may enjoin any act of

an association toward one of its members which is unauthorized and unlawful, if he has not otherwise any remedy adequate for the protection of his rights. Under the general rule, if the rights of a member of an ordinary club or association, involving some pecuniary interest, have been disturbed by the committee of the club, he is entitled to ask a court of chancery whether the rules of the club have been observed, whether anything has been done which is contrary to natural justice, and whether the decision complained of was rendered after notice and according to the law of the association and in good faith.'' 4 Am. Jur. 466, Associations and Clubs, Sec. 18.

In the case of Cherry v. Bivens, 185 Miss. 329, 187 So. 525, the Court said: ''It is a fundamental principle that a person is entitled to notice and hearing before being deprived of his rights. Under the Constitution of Mississippi, section 24, every person for an injury done him in his lands, goods, person or reputation is entitled to remedy in due course, and by the Mississippi Constitution, as well as the Fourteenth Amendment to the Federal Constitution, U. S. C. A., no person can be deprived of life, liberty or property, except by due process of law. And while a fraternity society, social or religious organization is not within the letter of the provisions named, yet the state has established, as a matter of public policy, the rights mentioned, and the positions in such organizations, are valuable rights pertaining to the liberty of the citizen, and effects his reputation if he is expelled from such organization, or deprived of his rights without an opportunity to be heard. It would be fundamentally unjust to deprive a person of these offices in such organizations, and to have his reputation affected by the fact that he was expelled, or his rights forfeited by superior officers.'' In this case certain persons claiming to be the true officers of a Masonic lodge filed a bill in the chancery court, asking that certain persons

who had been suspended by the "Grand Master" be required to turn over property to them. There was no hearing on the charges, either before or after the "suspension", and the Court said: "Had there been a hearing in the matter, a different question would have been presented."

Courts have recognized the rights of labor unions to enforce their by-laws governing conduct of members. 31 Am. Jur. 858, Labor, Sec. 50, (1940 Ed.). Moreover, no person has an abstract or absolute right to membership in an association or labor union. 31 Am. Jur. 861, Labor, Sec. 58, (1940 Ed.).

██ █ Members may not be expelled or suspended except as authorized by the by-laws. 31 Am. Jur. 864, Labor, Sec. 68, (1940 Ed.). Sweetman v. Barrows, 161 N. E. 272, 62 A. L. R. 311. Courts will grant relief when members have been expelled wrongfully or without notice. 31 Am. Jur. 865, Labor, Sec. 69, (1940 Ed.). The rule that courts will not intervene to reinstate a suspended member until remedies within the union have been exhausted does not apply when there is no remedy provided in the by-laws and the organization provides no remedy for a hearing. 31 Am. Jur. 865, Labor, Sec. 70, (1940 Ed.).

 The testimony in this case reveals that appellant was informed of the charges against him, and he was advised of the time and place for a hearing. The hearing was had and testimony taken by the group named to hear the charges in the International Constitution. Appellant contends that he was entitled to notice before his suspension, but the Constitution and Bylaws of the International Constitution in Article IV, Sec. 1, expressly states; "* * * He (the President) shall have the direction and supervision of all Subordinate and District Lodges, and be empowered to suspend their individual members * * * when, in his judgment, the actions of such member * * * are in violation of the International Con-

stitution * * * or are in violation of the declared policies of our International Brotherhood." Appellant also contends that he did not have a hearing because the International Constitution and By-laws, Article IV, Sec. 5, states in part that "The pendency of any such appeal shall not act to stay the order of suspension or revocation." In other words, the president's action in suspending appellant without notice had the effect of "expelling" appellant from the union without a hearing. In the case of Cherry v. Bivens, supra, this Court has held that such power is arbitrary. Other states have also held such authority to be arbitrary power. Gilmore v. Palmer, 179 N. Y. S. 1, 109 Misc. 552; Spayd v. Ringling Rock Lodge No. 665, 113 A. 70; Taboada, et al. v. Sociedad Espanola De Beneficencia Mutua, et al., 27 A. L. R. 1508, 215 P. 673; Grand Grove U. A. O. D. v. Garibaldi Grove No. 71 U. A. O. D., 38 P. 947.

██ ██ The fallacy of appellant's argument in this case, however, is found in the use of the word "expelled". The President, under the Constitution, has a right to suspend a member, and he remains suspended until the order is reversed by the International Executive Council or by the International Convention. The case of Cherry v. Bivens, supra, as heretofore stated, holds that if there had been a hearing, a different question would have been presented. The difference between the words "suspension" and "expulsion" has been discussed by the textwriter in 4 Am. Jur. 468, Associations and Clubs, Sec. 21, as follows: "The distinction between suspension and expulsion is frequently recognized in the by-laws or societies and clubs. Suspension is usually a temporary privation of rights and benefits; expulsion, on the contrary, is a disfranchisement, severing the connection between the expelled member and the organization. Ordinarily, a suspended member may be reinstated upon paying the amount charged against him. But an expelled member can be readmitted only on the terms

and conditions of a new member. By suspension one does not cease to be a member.''

Pending a hearing, a labor union or other association may suspend a member, and after proper hearing, may expel him. See 4 Am. Jur. 469, Associations and Clubs, Sec. 22. It is essential, however, that a member be given notice and a hearing. 4 Am. Jur. 471, Associations and Clubs, Sec. 25. It is apparent that a member of a union or association would be greatly handicapped to be required to take witnesses and travel across the continent to attend a hearing to determine whether or not his membership will be discontinued on a charge of misconduct; and it is unreasonable for the Constitution and Bylaws of a labor union to require a member, after expulsion, to appeal to a Convention to be held in a foreign country. People, ex rel. Baker v. Coachman's Union Benevolent Ass'n of New York, 4 Misc. 424, 24 N. Y. S. 114; The Maccabees v. Sabine, 249 S. W. 1114.

In this case, however, appellant did not claim that he could not afford to take his witnesses to Chicago from Pascagoula in order to attend the hearing before the International Executive Committee; and he did not request a hearing in Mississippi or some place within reach of his witnesses, after receiving notice of the hearing. But, instead of asking for a local hearing, the appellant went to Chicago and appeared before the Executive Council at the time and place specified in the notice of hearing given to him. He testified, and heard the testimony offered against him, and also had an opportunity to hear the charges made against him. This was denied by appellant, but there is ample testimony in the record to sustain the chancellor on this point. The rule that one is entitled to notice before hearing is waived if the member appears and makes his defense before the group or committee conducting the investigation. In 4 Am. Jur. 471, Associations and Clubs, Sec. 25, it is said: ''However, the lack or insufficiency of notice may

be waived by the member. Thus, it has been held that notice is not necessary if, as a matter of fact, the member actually appears and defends himself before the committee or officer conducting the investigation. Voluntary submission by a member of an association or club to a trial of a dispute by a committee under rules of the organization estops him from denying the jurisdiction of the committee, with respect to either person or subject-matter.''

''An incorporated social club may regulate, through its by-laws, the causes for the expulsion or suspension of members and the manner of effecting the same, when such power is expressly conferred by its charter. It is also a rule of general application that one who has become a member of an incorporated social club will be deemed to have known and assented to the provisions of its charter and by-laws, which it was authorized to make, and cannot object to the enforcement thereof on the ground that he is deprived of any legal or constitutional right.'' 4 Am. Jur. 460, Associations and Clubs, Sec. 8.

The Supreme Court of the State of Washington examined the Constitution and By-laws of the appellee, International Brotherhood of Boilermakers, Iron Ship Builders & Helpers of America, in a case where this same President, Charles J. McGowan, acting under Article IV of the International Constitution (section here in question) suspended Local Lodge No. 104. It is claimed in that case, as it is here, that the President ''secured the advice of a majority of the International Executive Council'', and not only suspended the lodge, but the officers of the lodge, and appointed other persons to assume the duties of the Officers of Lodge No. 104. The lower court failed to grant relief against the acts of the President of the Union, but the Supreme Court reversed the case, and held: ''It is further Ordered * * * that the International Brotherhood be and it is hereby enjoined from suspending or expelling any individual members of Local 104 as

members without notice given, charges, and the opportunity to be heard.'' Washington Local Lodge No. 104 of International Brotherhood of Boilermakers, Iron Ship Builders & Helpers of America, et al. v. International Brotherhood of Boilermakers, Iron Ship Builders of America, et al., 203 P. 2d 1019. It is apparent, therefore, from this well-reasoned opinion, that the question of ''opportunity to be heard'' may become a question of fact to be determined by the trial court.

██ ██ We are of the opinion in this case here on appeal that appellant is estopped to deny that he had a proper hearing before the International Executive Council. We are also of the opinion that the judgment of the International Executive Council is binding on this Court under the circumstances. The rule is set out in 4 Am. Jur. 472, Associations and Clubs, Sec. 27, as follows: ''The decisions of any kind of voluntary society or association is disciplining, suspending, or expelling members are of a quasi judicial character. In such cases the courts never interfere except to ascertain whether or not the proceeding was pursuant to the rules and laws of the society, whether or not the proceeding was in good faith, and whether or not there was anything in the proceeding in violation of the laws of the land. If it is found that the proceeding was had fairly, in good faith, and pursuant to the laws of the organization, and that there was nothing in it in violation of the law of the land, the decision is conclusive. In other words, a member of an association, society, or club who is suspended or expelled by the tribunal vested with authority in this respect, pursuant to a fair hearing in which he has been given an opportunity to appear and defend himself, conducted in accordance with the procedure established by the constitution or by-laws of the organization, has no recourse to the courts.''

Appellant, however, insists that he made an application to be reinstated and was entitled to be reinstated

since a "suspension" was limited to a period of sixty days under the Constitution of the local lodge. Article XIV, Sec. 7; and Article XV, Sec. 10.

The pertinent parts of these Articles are as follows: Article XV, "Sec. 5. Any member expelled or suspended from any Subordinate Lodge for any reason other than the non-payment of dues, and recorded in International Office, cannot be accepted as a member of any Subordinate Lodge, unless first securing the consent of the Subordinate Lodge so suspending or expelling them, and collecting such fines, assessments and dues standing against them, and the same shall be forwarded to the Subordinate Lodge from which they came. In case any Subordinate Lodge violates this provision it shall be fined * * *"

"Sec. 10. Unless otherwise herein set forth, any member violating any of the provisions of this Article or any of the other provisions of this Constitution and By-laws shall be fined not less than twenty-five ($25.00) dollars nor more than one hundred ($100.00) dollars for each offense or suspended for not less than thirty (30) days nor more than sixty (60) days, *unless expelled from membership*. Suspension or expulsion referred to in this Article means suspension or expulsion from membership of any Subordinate Lodge and this International Brotherhood." (Emphasis supplied.)

 ██ It is obvious, however, that Article XV, Sec. 10, Subordinate Lodge Constitution of the International Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America, et al., is controlled by Article IV, Secs. 1, 3, 4, of the Constitution and By-laws of the International Brotherhood of Boilermakers, Iron Ship Builders and Helpers of America. Janow v. Grad, et al., 16 N. Y. S. 2d 118; Davis, et al. v. International Alliance of Theatrical Stage Employees, etc., 141 P. 2d 486. Moreover, the testimony before the chancellor indicated that appellant was not "working in the trade" at the time

of this application for reinstatement, and that this is a prerequisite to being considered for membership in the local lodge. Appellant insists that a letter written by the President of the International Brotherhood showed conclusively that he would not be accepted whether he was working in the trade or not. We are of the opinion, however, that this was a question of fact to have been determined by the chancellor.

We have avoided discussing the charges against appellant on which the President of the International Brotherhood acted, because it cannot now serve any useful purpose. We think it sufficient to say that the President and the International Executive Council had more than ample grounds to warrant the expulsion of appellant from their Labor Union, and for the reasons herein expressed, we are of the opinion that the chancellor was correct and should be affirmed.

The judgment of the lower court is therefore affirmed.

Affirmed.

*Lee, P. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.