KING, Justice,
dissenting:
¶ 77. The majority finds that Hatties-burg High School’s (HHS) complaint was not predicated on a legally cognizable claim; I respectfully disagree. HHS al-' leged in its complaint that, the “Association’s actions and conduct did not follow its own rules and regulations regarding residency determination of the minor Plaintiffs. The MHSAA’s actions in denying the minor Plaintiffs eligibility for competition in athletic activities were arbitrary and capricious.” If the MHSAA failed to follow its own rules and regulations and acted arbitrarily in doing so, the MHSAA would have breached its contract with HHS by acting without good faith. Thus, HHS did in fact allege that the MHSAA had breached its contract with HHS &nd did assert a legally cognizable 'claim. Explicitly stating that the MHSAA had breached its contract with HHS, while desirable perhaps, was unnecessary.
¶78. As Chief Justice Waller states, this Court’s precedent clearly shows that decisions of voluntary associations may be reviewed for arbitrariness. “The decisions of the tribunals of an association with respect to its- internal affairs will, in the absence of mistake, fraud, collusion, or arbitrariness, be accepted-by the courts as conclusive.” Lowery v. Int’l Bhd. of Boilermakers, 241 Miss. 458, 130 So.2d 831, 836 (1961). The Court of Appeals reaffirmed this principle in Morf, holding that a private organization’s decisions may be reviewed for arbitrariness. Morf v. N. Cent. Miss. Bd. of Realtors, Inc., 27 So.3d 1188 (Miss.Ct.App.2009) (“[I]t is clear to this Court that the Board acted arbitrarily and capriciously in disciplining the Morfs.”).
¶79. While the majority distinguishes Lowery and states that the Lowery Court was not reviewing the union’s decisions simply for arbitrariness, the fact that the Lowery Court was not solely reviewing .for arbitrariness fails to show that HHS’s complaint was deficient. As this Court stated in Trail, “[o]nce a school decides to create a sports program and establish eligibility rules, the school — or as in this case, the MHSAA — has a duty to follow those rules....” Mississippi High Sch. Activities Ass’n, Inc. v. R.T. ex rel. Trail, 163 So.3d 274 (Miss.2015). HHS alleged in its complaint that the MHSAA did not follow its rules and acted arbitrarily in doing' so. Therefore, HHS alleged that the MHSAA had breached its contractual duty to follow its rules and bylaws.
¶ 80. This Court, as well as many others, has held previously that a claim of arbitrariness invokes the jurisdiction of the courts.[10] HHS’s claim that, the MHSAA *1232 failed to follow its own rules — and acted arbitrarily in doing so — sufficiently alleges that the MHSAA breached its contractual duty with HHS. As such, HHS’s complaint alleged a cause of action, and the chancery court had jurisdiction to review HHS’s claims.
¶81. I believe that the ruling of the MHSAA concerning Tiaria’s eligibility was not supported by substantial evidence, and" thus was by definition arbitrary and capricious. The MHSAA declared Tiaria to be ineligible to participate in athletics for three reasons. Those reaso'ns, in the order of emphasis placed on them, are: one, special inducement; two, residency; and three, lack of good standing.

1. Special Inducement

¶ 82. The MHSAA Handbook provides that:
A pupil must not have been given any special inducement of any kind to attend a school to play on an athletic team. Special inducement is interpreted to mean:
10. A student that plays for a coach or team made up of students from a school (school B) other than his/her home school during the non-sports season may not be eligible for school B unless a hardship is granted by the MHSAA or the student has been in school B for one calendar year from the date of enrollment.
¶ 83. The MHSAA’s application of this rule creates a presumption of special inducement, which may not be rebutted even in the face of evidence to the contrary. According to the MHSAA, under this presumption, which is not subject to rebuttal, because Tiaria played Amateur Athletics Union (AAU) summer basketball on a team coached by the Hattiesburg High School ninth-grade basketball coach, the evidence strongly supported a violation of the special-inducement rule. However, the mere fact that Tiaria played basketball in the off-season under Coach Burnell Wesco is not enough to establish any special inducement. Other than this unre-buttable presumption, no evidence was presented to the MHSAA to even remotely suggest that Coach Wesco, or any person associated with HHS, had induced Tiaria to transfer to HHS. Such a finding in the face of all of the uncontradicted evidence is by definition arbitrary and capricious.
¶ 84. It is uncontradieted that LaShan-non Slay, Tiaria’s mother, moved to Hat-tiesburg for employment purposes. On Tiaria’s, special eligibility form, the reason stated for Tiaria’s transfer to Hattiesburg was her mother’s relocation to Hattiesburg for purposes of employment. That form also refers to attached documents. The attached documents included two letters: one from Vicki .Rutland to Daryl Scoggin, and the other from Scoggin to Rickey Neaves.[11] In Rutland’s letter to Scoggin, she merely expressed her belief that Hat-tiesburg was recruiting players. However, the mere expression of a belief is not evidence. Rutland wrote that Tiaria was friendly with the coach of the Hattiesburg boys’ basketball team at a game, and that Rutland felt that there was a pattern of recruiting at Hattiesburg. Similarly, in Scoggin’s letter to Neaves, Scoggin wrote that he strongly believed Coach Wesco had been actively recruiting Tiaria. Even Scoggin’s strongly held belief is not evidence. The only evidence Scoggin gave to support his belief was a video of Tiaria *1233 playing basketball on Coach Wesco’s website.
¶ 85. “Substantial evidence means something more than, a ‘mere scintilla’ or suspicion.” Public Employees’ Ret. Sys. v. Marquez, 774 So.2d 421, 425 (Miss.2000). “If an administrative agency’s decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious.” Id. at 430. It is uncontested that Slay’s job as a teaching assistant in Lawrence County ended in May 2011. It is uncontested that Slay accepted a position as a teaching assistant with the Hattiesburg School District. It is uncontested that there was no evidence in the record showing any available job opportunities for Slay outside of the Hattiesburg area. There is no allegation, and nothing in the record before the MHSAA to imply or suggest that Coach Wesco or HHS induced Slay to apply for the open teaching position in Hattiesburg.
¶ 86. The application of this rule and the holding of the MHSAA, under the facts of this case, is at best arbitrary and capricious. Tiaria’s brother, Steven, who also moved to Hattiesburg because of his mother’s employment, was not found to be ineligible to participate in athletics, while Tiaria was.
¶ 87. The mindless and robotic application of this rule in the face, of all of the contrary facts is, beyond question, not supported by substantial evidence, and is thus, by definition, arbitrary and capricious. No substantial evidence supports the conclusion that Tiaria was induced by Coach Wesco to play basketball at HHS in violation of the MHSAA’s special inducement rule. Rutland’s and Scoggin’s mere speculation is not enough.
⅞ Residency
¶ 88. The MHSAA’s finding that Tiaria moved to Hattiesburg to become athletically eligible also was arbitrary and capricious and not supported by substantial evidence. A pupil' must be á “bóna fide resident” of a new school district at least sixty days prior' to the opening’ of school only if the pupil moved into the school district for the sole purpose of being athletically eligible.- ¡As- discussed- above, there-was not substantial evidence showing ..that Slay, Tiaria, and Steven.moved to Hattiesburg so Tiaria could become athletically eligible at- HHS. It is undisputed-that Slay’s,-position as a teaching assistant in* Lawrence County was terminated in May- 2011. Slay also stated at a MHSAA hearing that her part-time job in Monticello closed in July of the same year.
¶ 89. Slay no longer had a source of income coming from either the Lawrence County School District (LCSD) or Monticello. Hattiesburg had a similar job opening for a teaching assistant. Slay applied for and accepted the position, requiring Slay to move and her daughter also to move with her. Slay did not voluntarily terminate her position with the LCSD or Monticello in order to pursue employment in Hattiesburg. ' Slay’s position with the LCSD was terminated; forcing her to find employment -elsewhere. Again, Rutland’s and Scoggin’s mere suspicions and concerns that Coach Wesco had been actively recruiting Tiaria áre not enough to meet the substantial evidence burden of showing that Tiaria moved to Hattiesburg for the sole purpose of béing athletically eligible.

3., Lack of good standing

¶ 90. In the case of a transfer student, the MHSAA Handbook requires that the student be in - good ’standing with the school she is leaving in order to be eligible at her new school. The Handbook does not define good standing or give guidelines as to what would make an athlete not in good standing. The same rule states that *1234 “the school shall secure a transcript of the high school work completed by the student and a transfer form signed by the principal of the school from whence he comes.”[12]
¶ 91. Testimony that Tiaria had failed a drug test and would have to sit out the first two games of the' season does not automatically establish there was substantial evidence: showing Tiaria was not in good standing at LCHS. There was no evidence showing a notation on Tiaria’s transcript' or transfer form that she was not in good standing with LCHS because of the suspension. No evidence was established that the MHSAA had guidelines concerning drug tests and athletic standing. Further, LCHS allowed Tiaria to play basketball for the sehool in an all-star game in July, after Tiaria had failed the drug test and after imposition of the penalty. To rule that Tiaria was not in good standing with LCHS, therefore making her ineligible to play at Hattiesburg, solely based on testimony that Tiaria had failed a, drug test and was. required to sit out the first two games of the season, was arbitrary and capricious.
¶ 92. I conclude that the MHSAA had no substantial .evidence to rule Tiaria ineligible to play basketball at HHS and that it thus breached ..its contract, by this arbitrary and capricious action, and I would affirm the chancellor’s holding on this issue. Therefore, I respectfully dissent. '
RANDOLPH, P.J., AND CHANDLER, J., JOIN THIS OPINION.. WALLER, C.J., JOINS THIS OPINION IN PART.

. See Alabama High Sch. Athletic Ass’n v. Rose, 446 So.2d 1, 4 (Ala.1984) ("Of course, if the acts of an association are the result of fraud, lack of jurisdiction, collusion, or arbitrariness, the courts will intervene to .protect an injured [party's] rights/’) (emphasis added). See also Scott v. Oklahoma Secondary Sch. Activities Ass’n, 313 P.3d 891 (Okla.2013); Nat’l Collegiate Athletic Ass’n v. Lasege, 53 S.W.3d 77 (Ky.2001); Alabama High Sch. Athletic Ass’n v. Rose, 446 So.2d 1 (Ala.1984); Anderson v. South Dakota High Sch. Activities Ass’n, 247 N.W.2d 481 (S.D.1976); Robinson v. Illinois High Sch. Ass’n, 45 Ill. *1232 App.2d 277, 195 N.E.2d 38 (1963); State ex rel. Ohio High Sch. Athletic Ass’n v. Judges of Court of Common Pleas of Stark County, 173 Ohio St. 239, 181 N.E.2d 261 (1962).

. Rutland was Tiaria’s basketball coach at . Lawrence County High School. (LCHS). Scoggin was the principal at LCHS. Neaves was the associate director of the MHSAA.

. The wording of &e MHSAA Handbook implies academic goodstanding.