390 So.2d 982 (1980)
MULTIPLE LISTING SERVICE OF JACKSON, INC. and Jackson Board of Realtors, Inc.
v.
CENTURY 21 CANTRELL REAL ESTATE, INC. and Helene Cantrell, President.
No. 52144.
Supreme Court of Mississippi.
November 19, 1980.
John Land McDavid, McDavid, Edmonson & Noblin, Alex A. Alston, Jr., Thomas, Price, Alston, Jones & Davis, Jackson, for appellants.
Robert G. Nichols, Jr., W.E. Gore, Jr., Jackson, for appellees.
*983 Before PATTERSON, C.J., and WALKER and BROOM, JJ.
WALKER, Justice, for the Court:
This case involves the right of a private association to make rules of conduct involving its membership and its right to enforce disciplinary sanctions for failure to follow these rules. The appeal arises from the Chancery Court of the First Judicial District of Hinds County, which issued a final decree enjoining the appellants, Multiple Listing Service of Jackson, Inc. (hereinafter MLS) and Jackson Board of Realtors, Inc. (hereinafter called Board of Realtors) from enforcing disciplinary sanctions against appellees, Century 21 Cantrell Real Estate, Inc. and Helene Cantrell, President (hereinafter collectively called Cantrell).
Both the Board of Realtors and MLS are non-profit professional associations, membership in which is voluntary. Cantrell became a member of the Board of Realtors on December 29, 1975, and a member of MLS on April 20, 1976. The two associations became affiliated on February 15, 1977. Cantrell was a member in good standing of the affiliated organizations.
The injunction issued by the Chancery Court prohibited the enforcement of three separate sanctions against Cantrell involving two unrelated complaints filed against her.[1]
The first sanction, imposed by the Board of Realtors, was a severe reprimand and the placing of Cantrell on probation for a period of six months. It was error for the lower court to enjoin the enforcement of this sanction for the reason that Cantrell did not first exhaust the administrative remedies provided by the Constitution and Bylaws of the Board of Realtors. Cantrell did not appeal to the Board of Directors of the Board of Realtors, even though she was informed of her right to do so. The authorities are fairly uniform that the administrative remedies must be exhausted before resorting to the courts. NCAA v. Gillard, 352 So.2d 1072 (Miss. 1972).[2]
The second sanction, also imposed by the Board of Realtors, was the suspension of Cantrell from membership in that association for a period of thirty days. For the reasons hereinafter stated we find that the chancellor erred in enjoining the thirty-day suspension.
The third sanction, which was imposed by MLS, was a fine of $300. For the reasons hereinafter stated we are of the opinion the chancellor did not err in enjoining the enforcement of this sanction.
The authorities are in general agreement that judicial review of disciplinary proceedings of a voluntary association should be limited to determining only whether the member disciplined received procedural due process as required by the Fourteenth Amendment to the United States Constitution, and whether the association has conducted its inquiry in accordance with its own rules of procedure. The writer of an exhaustive article involving judicial review of the actions of private associations stated:

*984 Where an association has conducted its inquiry in accordance with its own rules of procedure and in conformity with the minimum standards externally imposed to produce a rational and valid result, there is a strong presumption that its determination is a proper one. The interest in finality in the adjudication of disputes and the deference due the autonomy of the association and the competence of its tribunal argue against a broad scope of judicial inquiry. If a court, on consideration of the evidence adduced before the association tribunal, is convinced that the facts upon which the group's action is based could reasonably have been found by a body acting in good faith, it probably should refuse to overturn an otherwise proper proceeding. 76 Harv.L.Rev. 983 at 1037 (1963).
In Lowery v. International Brotherhood of Boiler Makers, Inc., 241 Miss. 458, 130 So.2d 831 (1961), this Court cited with approval the general rule, as follows:
The authorities seem to hold fairly uniformly that the courts will not intervene except for fraud perpetrated upon a member, or lack of jurisdiction. `It is well established that courts will not interfere with the internal affairs of voluntary associations, except in such cases as fraud or lack of jurisdiction. * * * The decisions of the tribunals of an association with respect to its internal affairs will, in the absence of mistake, fraud, collusion, or arbitrariness, be accepted by the courts as conclusive. Moreover, it is held that the courts will not undertake to inquire into the regularity of the procedure adopted and pursued by such tribunals in reaching their conclusions.' 4 Am. Jur. 466, Associations and Clubs, Sec. 17. (130 So.2d at 836).
In the case at bar, the disciplinary proceedings were in full compliance with the constitution and bylaws of the Board, and the thirty-day suspension was given only after Cantrell was afforded every element of due process. That is, she was given notice of the charges, notice of a hearing, the right to confront and cross-examine witnesses, an opportunity to refute the charges, and a hearing before an unbiased tribunal.
A private association has the right to set its own goals and standards as long as they are not against the public policy of the State. Cantrell, by her assent to the rules of the Board of Realtors, bound herself to abide by all lawful limitations imposed by those rules. The decision of the Board of Realtors, relative to the thirty-day suspension, was not arbitrary and capricious or an abuse of discretion and thus cannot be set aside under the limited review available in the courts. We therefore hold that the lower court erred in enjoining the enforcement of the thirty-day suspension of Cantrell imposed by the Board of Realtors.
The $300 fine imposed by MLS presents a different question. The complaint sent to MLS by Cecil Cost requested that MLS investigate a possible violation of Article 2(j) of the MLS Rules and Regulations, which state:
Any listing filed with the Multiple Listing Service shall not be made available to any non-participant in MLS without the consent of the listing broker.
After receiving the written response from Cantrell, MLS informed her by letter dated October 28, 1977, that she had been found guilty of violating Article 2(j) and that her membership in MLS would be suspended for sixty days unless she paid a penalty of $1,000. Cantrell was also informed that she had the right to appeal this decision to the professional standards committee of the Board of Realtors. Cantrell decided to appeal, and she was given a full and complete hearing, accompanied by all the required procedural safeguards heretofore mentioned. On April 4, 1978, the committee notified Cantrell that she had been found guilty of breaching Article 2(j) and that she was fined $300. Cantrell appealed this decision to the Board of Directors of the Board of Realtors, which affirmed the decision of the committee. The lower court enjoined MLS from enforcing this fine, in part because the rules and regulations of MLS established no guidelines for the imposition of fines or penalties.
*985 Article IV of the MLS Bylaws, Rules and Regulations provides the following procedure for the enforcement of rules or disputes:
Section 1. The Board of Directors shall give consideration to all written complaints from members having to do with a violation of the By-Laws or the Rules and Regulations.
(a) The Board of Directors shall have the authority to reprimand, suspend, or expel members upon violation of the By-Laws, or the Rules and Regulations of MLS. The Board of Directors, if it should see fit, may grant the option of receiving a monetary fine in lieu of suspension. All penalties are to be prescribed for each individual offense by the Board of Directors of MLS.

(b) If the offense is one of a violation of the Bylaws or the Rules and Regulations and the member does not accept the disciplinary action imposed by the Board of Directors as in (a) above [t]he member may appeal for a hearing before the Professional Standards Committee of the Jackson Board of REALTORS in accordance with the By-Laws of the Board of REALTORS.
(c) All other complaints on professional conduct shall be referred by the Board of Directors to the Jackson Board of REALTORS for appropriate action in accordance with the usual procedures under terms of the By-Laws of the Board of REALTORS. (Emphasis added).
The main question before the Court on this part of the appeal involves the validity of the $300 fine imposed by MLS through the committee and the Board of Directors of the Board of Realtors. The bylaws of MLS give the Board of Directors of MLS the authority to levy fines. Article IV states that all penalties are to be prescribed for each individual offense by the Board of Directors of MLS. Similarly, the constitution and bylaws of the Board of Realtors authorize the professional standards committee to impose fines. However, nowhere in the record is there any indication that the amount of such fines are determined according to any uniform method, and there is no indication in the record as to the maximum allowable amount of a fine. In American Men's & Boy's Clothing Manufacturers Association v. Proser, 190 A.D. 164, 179 N.Y.S. 207 (Sup.Ct. 1919), the New York Court stated the following:
It is quite competent for such an association as the Plaintiff to fix penalties by way of fines for derelictions of its members; but the penalties must be determined according to some method, to which the member has agreed, at least impliedly by joining the association, not only as to the imposition of the fine, but also as to the maximum amount thereof; otherwise, the association would be allowed to assess its own damages, which would be clearly unjust and improper. And a by-law imposing an excessive fine would be set aside as unreasonable. Hagerman v. Ohio Building & Savings Ass'n, 25 Ohio St. 186; Lynn v. Freemansburg B. & L. Ass'n, 117 Pa.St. 1, 11 Atl. 537, 2 Am.St.Rep. 639.
To hold that an association of this character might assess such amounts as it saw fit for any infraction of its rules or by-laws, important or unimportant, would make possible a course that would work serious loss to members and invite an abuse of authority. A fixed, reasonable fine, in the nature of liquidated damages for injury sustained because of dereliction, would be sustained. (179 N.Y.S. at 210).
See also 6 Am.Jur.2d Association & Clubs § 32 at 460 and 7 C.J.S. Associations § 31 at 73.
The appellants agree that arbitrary and capricious fines imposed without the consent of the member or without procedural safeguards are manifestly unjust. They contend, however, that Cantrell, by joining these associations, impliedly and expressly agreed to become subject to the disciplinary sanctions of those associations, including the imposition of suspensions and fines. Article VII, section 2(c) of the Board provides that after a hearing by the professional standards committee, the committee may *986 find the charges to be unfounded, or may direct the reprimand, fining, suspension or expulsion of the member. The bylaws of MLS, in Article IV, section 1(a) state that the Board of Directors of MLS has the authority to reprimand, suspend or expel members, or may grant the option of receiving a monetary fine. Article IV, section 1(b) provides for an appeal and hearing before the professional standards committee of the Board, in accordance with the bylaws of the Board.
The appellants' main argument is that decisions by an association which are not arbitrary or capricious should not be set aside under the limited review which courts undertake. They argue that discipline is essential to insure that no unfair advantage is taken by, nor any unreasonable burden placed, on any individual, and that each member conduct himself in a manner that promotes beneficial and economical interaction among the co-members for the good of all the members. They also contend they have a duty to its members and to the public to maintain professional standards of conduct and to insure that violations of these standards by a few do not breed public disrespect for all its members. Without the power to discipline, after fair hearings, those members who transgress the standards agreed to, neither the appellants nor any similar body can hope to fulfill these important purposes.
We agree with the appellants that it is highly desirable that private organizations, such as MLS and the Board, have the right to discipline members for violations of standards of professional conduct as set out by the constitution, bylaws, rules and regulations of the respective organizations. However, we also are of the opinion that before a fine can be imposed a private association must have a schedule of maximum fines that may be imposed to which schedule each member has agreed to be bound by joining the association. To hold that an association might arbitrarily prescribe fines for each individual offense as it sees fit would make possible and invite an abuse of authority. A fixed, reasonable fine, in the nature of liquidated damages, for injuries sustained because of unprofessional or unethical conduct would be sustained. But an arbitrary fine, such as the one imposed here, cannot be enforced. We therefore hold that the chancellor properly enjoined the enforcement of the $300 fine by MLS for the reason that MLS has not established, and Cantrell has not agreed to be bound by, a maximum fine in a reasonable amount that may be imposed upon a member for violating its rules. The amount of such fine is left to be arbitrarily fixed after the particular offense has been charged and proved. This does not comport with the equal protection clause of the Fourteenth Amendment to the United States Constitution.
The decree of injunction issued by the chancery court is affirmed insofar as it enjoins MLS from imposing a $300 fine on Cantrell; it is reversed insofar as it enjoins the Board of Realtors from enforcing its suspension and probation of Cantrell. The injunction is modified accordingly, and those two sanctions are left in full force and effect.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE, BOWLING and COFER, JJ., concur.
NOTES
[1] A complaint was filed by Cecil Cost with both the Board of Realtors and MLS on October 6, 1977, charging that Cantrell had allowed a third party broker, a non-member of MLS or the Board of Realtors, to show a property listed by Cost after Cost had refused to give the third party broker permission to show the property. There was ample evidence to support the finding that this conduct violated the Code of Ethics of the Board of Realtors and the Rules and Regulations of MLS.

On February 18, 1978, Theresa Pitts filed a complaint with MLS, charging that Cantrell had materially altered a withdrawal notice. MLS referred this complaint to the Board of Realtors, and there was ample evidence to support the Board's finding that Cantrell had violated the Code of Ethics.
[2] In Gillard the Court vacated an injunction issued by the lower court, holding that a football player's "right" to engage in intercollegiate football is not a "property" right that falls within the due process clause of either the Mississippi Constitution or the United States Constitution. The Court also noted that Gillard should have exhausted his administrative remedies before resorting to the courts. Although dictum in that case, we feel the principle is a sound one based on practical, common sense reasoning.