505 So.2d 894 (1987)
COMMUNICATIONS WORKERS OF AMERICA AFL-CIO LOCAL 10414, Plaintiff-Appellant,
v.
Deborah CONLEY, Alma H. Johnson, Doris Heckard, Linda Sue Harris, Marilyn Patton, Myrtle Richmond, Elizabeth Masters, Patricia Jackson, Mary Hernandez, Richard Davis, Mary H. Robinson, Annie Braddock, Defendants-Appellees.
Nos. 18560-CA to 18571-CA.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1987.
Bruscato, Loomis & Street by Anthony J. Bruscato, Monroe, for plaintiff-appellant.
Charles D. Jones, Monroe, for defendants-appellees.
Before HALL, MARVIN and NORRIS, JJ.
MARVIN, Judge.
In 12 consolidated cases, the plaintiff union appeals judgments in its favor enforcing partly or wholly fines that were levied against each defendant union member who crossed the union's picket line to work during a strike. The issues concern whether eight of the defendants effectively resigned from the union on the first day of the strike and whether legal interest on each judgment should run from date of judicial demand rather than from date of trial. We amend to award interest from date of judicial demand and affirm each judgment as amended.

FACTS
A nationwide strike against AT & T and the Bell System began on August 7, 1983, and continued for three weeks. Defendants were employees of South Central Bell in Monroe and were members of the union when the strike was announced. On the first day of the strike, each of eight defendants signed a memorandum requesting that *895 the deduction of union dues from his or her paycheck be stopped. All 12 defendants continued to work during the strike. The union fined each defendant an amount equal to his or her rate of regular pay for three weeks. These actions were instituted to judicially enforce the unpaid fines.
The trial court found that the eight defendants who signed the memo to stop dues checkoffs had resigned from the union on the first day of the strike and could be fined only $50 for crossing the picket lines on that day, instead of $1,050 for the entire three-week period as the union had levied and demanded. The judgments against the other four defendants were not similarly reduced because these defendants did not prove that they resigned during the strike.
The judgments award legal interest from the date of trial, which was held 19 months after the actions were filed. In its reasons for judgment, the trial court stated "that it would be manifestly unfair on the defendants to order them to pay interest from date of judicial demand since it was obviously not the fault of any of them that the matters lingered so long before finally coming to trial."

RESIGNATION FROM THE UNION
The union contends that the request to the employer to stop the payroll deduction of union dues did not constitute notice of resignation to the union, and that the evidence does not support the trial court's finding that the memos used here had been accepted by the union as a notice of resignation during earlier strikes.
The eight memos, signed on the first day of the strike, were directed to South Central Bell's accounting office in New Orleans. Each memo read "Please cancel payroll deductions for union dues on: [employee's name, social security number and work location]" and was signed by that employee.
Except for the signature, each memo was written by Bobbie Lynn Edwards, an assistant supervisor in South Central Bell's Monroe office who was responsible for personnel and payroll matters. She testified that in the early 1970's, when someone asked how an employee could get out of the union, she was told by the payroll office in New Orleans to send the New Orleans office a memo signed by the employee requesting cancellation of the employee's payroll deduction for union dues. She said she followed this procedure over the years and was not told of any other procedure to use when an employee wanted to get out of the union.
Several defendants explained they had used this same memo to "resign" from the union during previous strikes. Defendants assumed from past experience that the union considered the cancellation of dues checkoffs as resignation because the union did not question or complain about the form of the memo and eventually asked them to rejoin the union.
The union points out that the union constitution allows a 90-day grace period before a member is automatically expelled for nonpayment of dues. Although the defendants who had "resigned" previously were not aware of this provision, they were also not aware of any procedure for resigning other than the signed request to stop dues checkoffs. The union constitution is silent as to how members may resign.
The union president testified that the union has always accepted any written notice that a member has resigned, whether by letter to the union or by copy of a letter directed to the employer, but the letter would usually include a statement that the member wished to resign from the union and a request to the employer to cancel the dues deduction.
The description of the practice for communicating notice of resignation to the union before the strike, given by the union secretary, is consistent with the instructions received and followed by the employer's assistant supervisor, Ms. Edwards. The union secretary said:
A letter had to be written by that individual stating their name, social security number, and their work location, they wanted to withdraw from the union or cease paying dues. The letter had to go *896 to the company [South Central Bell]. (Emphasis added.)
When asked if she knew of any arrangement for South Central Bell to handle resignation notices for the union, the secretary testified:
They would receive a letter. And then normally they'd send us a form letter that states that person's name, a social security number, that they request the dues be stopped.
Although the union did not get copies of the memos in these cases, and although the union records indicate the dues deductions did not stop until the month after the strike, we agree with the trial court that the eight defendants expressed their intent to resign on the first day of the strike by following the resignation procedure which had been accepted by the union in the past. We also agree that defendants should not be held responsible for any lack of communication between the employer and the union, especially during a strike when tension is great.
The union cites Bradley v. Local 119, Internat'l U. of Electrical, R. & M. Wkrs., 236 F.Supp. 724 (E.D.Pa.1964), as authority for its contention that cancellation of dues checkoffs does not constitute resignation from the union. We distinguish and do not follow that case. There, the union members revoked their checkoff authorizations in an attempt to put pressure on the union to act on their grievances against the employer. The union treated the revocations as resignations and refused to allow the members to attend or participate in union meetings, even though the members tendered their dues payments at the union office after the deductions stopped. The court found that the plaintiffs' actions showed they did not intend to terminate their membership by revoking the dues checkoff authorization and that it was not a matter of general knowledge among the membership that the revocations had been or would be construed by that union as resignations.
Here, defendants are not seeking to force the union into action and it is shown that the eight defendants intended to terminate their union membership by requesting cancellation of the dues deduction before beginning their work assignments on the first day of the strike. The record also shows that many South Central Bell employees considered it to be "common knowledge" that such a request was the way to resign from or get out of the union. Some employees had used this method before, without objection by the union, to resign their membership during earlier strikes. These defendants took no action as union members after signing the memos. By working during the strike, they clearly separated themselves from union activities.
Under the circumstances of this record, we find no clear error in the trial court's conclusions that the eight defendants who signed the memos effectively resigned from the union on the first day of the strike and could be fined only for that day and not for any other days they crossed the picket lines.

LEGAL INTEREST
The union prayed for legal interest from date of judicial demand. The court awarded interest only from the date of trial because so much time had passed since these suits were filed. The duration of judicial proceedings does not affect the time when legal interest begins to run. Palmer v. Waguespack Pratt, Inc., 457 So.2d 19 (La.App. 4th Cir.1984). Plaintiff is entitled to legal interest from date of judicial demand on all awards in these cases. See CCP Art. 1921; CC Art. 2000 (former Art. 1938).

DECREE
We amend each judgment to award legal interest from date of judicial demand. The cost of each appeal is assessed to the defendant. As amended, AFFIRMED.