HAWKINS, Presiding Justice,
for the Court:
This case is before us on consolidated appeal by the Communications Workers of America, Local 10517, an unincorporated association, from judgments of the Lee County Circuit Court dismissing separate complaints it had against Margaret Gann, Bobby Lee Jones, Stephen W. Brown, Sandra Johnson, Jacqueline Henderson, Jerry T. Loden, Anita Hope Hilliard, Russell Par-din, Jan M. Hunt, Wanda Bailey and Mac Evans. CWA is a local union whose members were employed in the Bell Telephone System during a work stoppage.
The defendants were union members who continued to work during a strike.
The union levied fines against each of them, and depending upon the fine levied— sought to recover from each defendant in either a justice court or circuit court of Lee County. The justice court judgments were all appealed to the circuit court.
Based upon our decision in Multiple Listing Service, Etc. v. Century 21, 390 So.2d 982 (Miss.1980), the circuit judge dismissed all complaints. We affirm.
FACTS
During a work stoppage apparently ordered by the union, the defendants Margaret Gann, Bobby Lee Jones, Stephen W. Brown, Sandra Johnson, Jacqueline Henderson, Jerry T. Loden, Anita Hope Hilliard, Russell Pardin, Jan M. Hunt, Wanda Bailey and Mac Evans, South Central Bell employees, continued to work. The union conducted a hearing as to each, and levied fines ranging from $225 to $1,600 against the defendants. The union then sought to recover the fines in court.
The complaint filed against each defendant in court stated:
III.
The Plaintiff and Defendant entered into an agreement by which the Defendant promised to abide by the Constitution and By-laws of Communication Workers of America, Local 10517 and specifically agreed that he (she) would not cross a Communications Workers’ picket line during an organized and authorized work stoppage and further agreed that if he (she) did he (she) could be fined by the Local under the Constitution and By-laws of the Local.
The only “agreement” offered to support the charge that the defendants agreed that any “fine” levied by the Union could be collected in a lawsuit were the printed booklets of the constitution and by-laws of the union. Article XIX of the Union constitution in pertinent part reads:
Article XIX Charges Against Members
Section 1 — Specifications of Offenses — Locals
Members may be fined, suspended or expelled by Locals in the manner provided in the Constitution for any of the following acts:
# # # # * #
(e) Working without proper Union authorization, during the period of a properly approved strike in or for an establishment which is being struck by the Union or Local;
There is nothing in the record to indicate that the amount of the fines was ascertained by any uniform predetermined methodology. There was no schedule notifying members of the maximum fines to which they would be subjected.
As noted, the circuit judge was of the view that Multiple Listings Service, Etc., controlled, and that because the union had not posted a schedule of fines for infractions which the union had charged the defendants, the fines could not be levied. He accordingly entered judgments for the defendants.
LAW
In Multiple Listing Service, Etc. v. Century 21, supra, three realtors filed suit in chancery court to enjoin the realtors’ association from sanctions imposed against each. One was severely reprimanded, the other suspended from membership, and the final one fined $300. In that case, as here, there was no previous notification of the amount of fine by schedule or listing.
*783 Upon appeal we found the association under its by-laws had the right to reprimand and suspend members, but held as to the fine:
However, we also are of the opinion that before a fine can be imposed a private association must have a schedule of maximum fines that may be imposed to which schedule each member has agreed to be bound by joining the association. To hold that an association might arbitrarily prescribe fines for each individual offense as it sees fit would make possible and invite an abuse of authority. A fixed, reasonable fine in the nature of liquidated damages, for injuries sustained because of unprofessional or unethical conduct would be sustained. But an arbitrary fine, such as the one imposed here, cannot be enforced.
We also cited and quoted American Men’s & Boys’ Clothing Manufacturers Ass’n. v. Proser, 190 A.D. 164, 179 N.Y.S. 207 (Sup.Ct.1919):
To hold that an association of this character might assess such amounts as it saw fit for any infraction of its rules or by-laws, important or unimportant, would make possible a course that would work serious loss to members and invite an abuse of authority. A fixed, reasonable fine, in the nature of liquidated damages for injury sustained because of dereliction, would be sustained. (179 N.Y.S. at 210).
The Union’s position is even more untenable than the Association in Multiple Listing, however. There was no attempt in that case by the Association to collect the fine it assessed in court. It was assessed as a penalty, and if the member did not pay it, he could either be suspended or expelled from the Association. It was the Association member who went to court to enjoin the Association from expelling him for nonpayment of the fine. The Association never contended the fine was a contractual debt it could collect in court.
The Union in this case takes the position that when a member joined the union he contractually bound himself that if he violated Union rules or regulations, the Union could conduct a hearing and impose a fine, which became a debt collectible in a court of law.
There is nothing about Section I of Article XIX which compels such a construction:
Members may be fined, suspended or expelled by Locals in the manner provided in the Constitution for ... working without proper Union authorization during the period of a properly approved strike....
Does this provision mean that a member has contractually bound himself to pay the fine which may (1) be collected in court, or (2) does it simply mean that he might be further disciplined by the Union for such nonpayment, by a more severe sanction such as suspension or expulsion?
A more plausible construction is that the fine is an intra-union discipline. If the member refuses to accept the union discipline, the union can punish him more severely by suspending or expelling him from the union. Since the Union prepared the Constitution, this provision should be construed most strongly against it. Hinds v. Primeaux, 367 So.2d 925 (Miss.1979); Globe Music Corp. v. Johnson, 226 Miss. 329, 84 So.2d 509 (1956); Home Mutual Fire Ins. Co. v. Pittman, 111 Miss. 420, 71 So. 739 (1916).
If the Union intended any such fine levied to be a contractual obligation, a debt, it would have been quite simple to state as much in the union constitution. Indeed, had the Union intended to claim these sums in court as liquidated damages, it was under a duty to spell them out in some form, setting out what the damages would be. United Glass Workers’ Local No. 188 v. Seitz, 65 Wash.2d 640, 399 P.2d 74 (1965); Retail Clerks Local 629 v. Christiansen, 67 Wash.2d 29, 406 P.2d 327 (1965).
The cases cited by the Union to uphold its position never addressed this precise point. We do not know whether there was in effect a contractual meeting of the minds whereby the member agreed to such court enforceable levy. Communications Workers of America, AFL-CIO, Local 6003 v. Jackson, 516 P.2d 529 (Okl.1973); *784 Lost v. Communications Workers of America, Local 9408, 91 Cal.Rptr. 722, 13 Cal.App.3d Supp. 7 (1970); NLRB v. Allis Chalmers Mfg. Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967).
Even if the cases cited by the Union were to the contrary, we are not bound to follow them. We are bound to follow firmly established basic contract law, and not do violence to its principles.
There is some sophistry in the argument that because most contracts do not provide for court enforcement of contract breaches (because the right is implied in any contract), the Union can also go to Court to collect its fine.[1] Such a statement, of course, begs the question. The maker of a note expects to be sued in event of nonpayment. A party to a contract who breaches his obligation knows that the wronged party can go to court and have the court determine the damages. And, of course, if there are any claims fpr liquidated damages, this must be spelled out in the contract to enforce it, this was not done here. In the Matter of Community Medical Center, 623 F.2d 864, 867 (3rd Cir. 1980); Consolidated Rail Corp. v. MASP Corp., 490 N.E.2d 514 (N.Y.1986); ABI, Inc. v. City of Los Angeles, et al., 200 CaLRptr. 563, 153 Cal.App.3d 669 (1984); Lane v. Pfeifer, 264 Ark. 162, 568 S.W.2d 212 (1978). Here a court assessment of damages was short-circuited. The Union took upon itself to determine what the damages were, and thereby usurped the function of the court.
There was nothing about this union provision to compel the construction that in event of nonpayment of a fine the most that could follow would be suspension or expulsion from the union.
Our imagination is not fertile enough to fathom that by this provision there was a clear intent by a union member to incur a court enforceable obligation through any such fine.
The ambiguity of meaning becomes more pronounced when we consider the phrase “fined, suspended or expelled.” This suggests one or the other, not all. Indeed, it would be impossible to suspend and expel at the same time. Therefore, if the Union chooses to fine a member, this is all it can do under this provision, unless — to accommodate the Union — we stretch “or” to mean “and.” Applying “or” to the Union’s argument provides us with an example of where this absurdity of construction would lead.
There can be no doubt that one of the most egregious wrongs a union member can do to his association is to continue to work when a strike has been called. A strike is by far the most powerful weapon organized labor has. Yet if union members continue to work during a called strike, the union becomes a toothless tiger. Presumably, the last person in the world the union wants among its members is a person who feels free to return to his job during a strike. Yet, if we follow the construction the Union requests in this case, by paying their fine these members can return to membership. Is the Union prepared to take them back as members when they have paid the “fine”? Clearly, under the wording of the phrase “fined, suspended or expelled,” the Union is not authorized to exact all three penalties simultaneously.
The only rational construction of the phrase means that if a union member violated a union rule, the Union conducts a hearing as to such infraction, following which the member may be fined. If he failed to pay the fine, presumably he would be subject to more severe union discipline such as suspension or expulsion. This is what the phrase appears to mean. It has no clear meaning nor demonstrates an intent that in event a member does not pay the fine, the Union may sue him and collect it in court.
A court is not requited, indeed we have no authority, to put a labor union in some special class in interpreting general legal principles.
We find the Union constitution does not mean what the Union claims it means. Even if it did, under Multiple Listing Ser *785 vice, supra, the clause is unenforceable because there was nothing in writing setting forth reasonable charges which would be exacted in event of various infractions occurred.
A labor union seeking to enforce discipline as was attempted here must have in place the appropriate written contract.
AFFIRMED.
WALKER, C.J., and DAN M. LEE, and GRIFFIN, JJ., concur.
ROY NOBLE LEE, P.J., and ROBERTSON, PRATHER and SULLIVAN, JJ., dissent.
ANDERSON, J., not participating.

. NLRB v. AUis-Chalmers, supra, makes this observation in a footnote.