ROBERTSON, Justice,
dissenting:
I.
With the greatest respect, I fear the majority is leading the Court into several not insignificant errors. These are best explained by what I suggest is a correct exposition of the matter.
This appeal arises out of a union local’s efforts to enforce judicially fines imposed upon eleven members who refused to honor a duly authorized and called strike. At the heart of the case, properly considered, is the question whether the fines were imposed arbitrarily and in violation of rights secured to the union members.
The Circuit Court denied enforcement of the fines and granted summary judgment in favor of the workers. For the reasons set forth below, I would reverse and remand.
II.
A.
The Communication Workers of America (“CWA”) is the recognized bargaining agent for employees of the Bell System. CWA Local 10517, headquartered in Tupe-lo, Mississippi, represents employees of South Central Bell Telephone Company and American Telephone & Telegraph Company in the northeast Mississippi area. CWA Local 10517 has over 300 members and is the Appellant in each of these cases.
This litigation arises out of CWA’s duly authorized nationwide work stoppage called against the Bell System in August of 1983. CWA Local 10517 fully participated in the strike which lasted approximately two weeks.
During the strike, at least eleven members of Local 10517 chose to ignore the Union’s strike order and continued working. Thereafter, Local 10517 commenced disciplinary proceedings within the Union’s Trial Court with the result that fines were assessed against eleven members.
CWA’s Constitution, Article XIX, Section 1, provides
Members may be fined, suspended or expelled by Locals in the manner provided in the Constitution for any of the following acts:
* * * * * *
(e) Working without proper Union authorization, during the period of a properly approved strike in or for an establishment which is being struck by the Union or Local; ...
Pursuant to this authority, fines were assessed by Local 10517’s Trial Court based upon the following:
(a) The number of days worked during the strike by that particular member.
(b) That member’s hourly base pay for an eight hour day excluding any overtime or additional pay paid to that person by the Company for working during an authorized work stoppage.
(c) That if any member resigned from membership in the Local, then only the days which he/she worked prior to the receipt of their letter of resignation was used in computing the amount of the fine.
Concededly, these criteria had not been announced or agreed to prior to the offenses, although I consider the point is of no moment. (At least this is my view and as well the view of every other Court to have considered the point. See cases cited below.) In the present procedural context we must take it as established that no *786 member was fined more than his daily base pay for each day of unauthorized work, nor was any member fined for any time he worked after the Local’s receipt of a letter of resignation.[1] The disciplinary proceedings were in full compliance with the procedural safeguards of the CWA Constitution and By-laws of the Local, and every accused member was given notice of the charges, notice of a hearing, the right to confront and cross-examine witnesses, an opportunity to refute the charges, and a hearing before an unbiased tribunal.[2]
Pursuant to the above described formula fines were imposed as follows:
NAME AMOUNT
Margaret Gann $1,000.00
Bobby Lee Jones 1,600.00
Stephen W. Brown 1,100.00
Sandra Johnson 1,500.00
Jacqueline Henderson 400.00
Jerry T. Loden 225.00
Anita Hope Hilliard 350.00
Russell L. Pardin 990.00
Jan M. Hunt 350.00
Wanda Bailey 350.00
Mac Evans 900.00
B.
In November of 1983 CWA Local 10517 commenced eleven separate civil actions, one against each of the parties named above, seeking enforcement and collection of the fines enumerated above. Several of these actions were brought in the Circuit Court of Lee County, Mississippi. Others were brought in the Justice Court of Lee County, Mississippi, and thereafter were appealed for trial de novo in the Circuit Court. In any event, all cases were consolidated by order entered October 17, 1984. See Rule 42(a), Miss.R.Civ.P.
In due course, each of the workers filed motions for summary judgment. See Rule 56, Miss.R.Civ.P. On March 22, 1985, the Circuit Court released its opinion granting each of the motions for summary judgment and finally dismissing Local 10517’s eleven separate complaints. The Circuit Court reasoned that, whereas a local union may discipline its members, it may not exact fines from them unless at the time a member joins the local there is in effect “a schedule of maximum fines that might be imposed upon violation of any prohibited act.” The Circuit Court went on to reason that “it is immaterial that in the assessment of fines the body charged with trying and assessing members found guilty of violation acts fairly, impartially and justly.” In so holding, the Circuit Court relied upon our decision in Multiple Listing Service of Jackson, Inc. v. Century 21 Cantrell Real Estate, Inc., 390 So.2d 982 (Miss.1980). The majority now affirms, erroneously, I suggest.
III.
Notwithstanding extensive federalization of the law of labor relations, including many matters affecting the internal affairs of labor unions, the authority of a union as a matter of member discipline to impose and collect fines has been relegated to state law. More specifically, the disciplinary provisions of the Union’s constitution and by-laws are regarded as private law enforceable except where prohibited by the state law of contracts and voluntary associations. See National Labor Relations Board v. The Boeing Company, 412 U.S. 67, 74, 93 S.Ct. 1952, 1956, 36 L.Ed.2d 752, 758 (1973). The Supreme Court has expressly held that there is no prohibition in federal law to a Union’s enforcement of fines levied against members who decline to honor an authorized strike. National Labor Relations Board v. Allis-Chalmers Manufacturing Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967). Pattern Makers’ League of North America, AFL-CIO v. National Labor Relations Board, 473 U.S. 95, 105 S.Ct. 3064, 87 L.Ed.2d 68 (1985) does no more than hold that fines may not be imposed upon employees/union *787 members after the latter have effectively tendered their resignation from the union. See also Communication Workers of America, AFL-CIO, Local 10414 v. Conley, 505 So.2d 894 (La.App.1987).
This and other state courts have repeatedly accepted the view that the constitution and bylaws of a labor union constitute a contract between the union, on the one hand, and its members, on the other. Lowery v. International Brotherhood of Boilermakers, Iron Shipbuilders and Helpers of America, 241 Miss. 458, 468-69, 130 So.2d 831, 834 (1961); Local 165, International Brotherhood of Electric Workers, AFL-CIO v. Bradley & Stankoskey, 149 Ill.App.3d 193, 102 Ill.Dec. 20, 499 N.E.2d 577 (1986); Jost v. Communications Workers of America, Local 9408, 13 Cal.App.3d supp. 7, 91 Cal.Rptr. 722, 723-24 (1970); United Glassworkers’ Local No. 188 v. Seitz, 65 Wash.2d 640, 399 P.2d 74 (1965); see also National Labor Relations Board v. The Boeing Company, 412 U.S. 67, 75-76, 93 S.Ct. 1952, 1957, 36 L.Ed.2d 752, 759 (1973). Except where prohibited by other law, disciplinary provisions of the constitution and bylaws of a labor union are judicially enforceable against the members, and the union may resort to state courts to enforce payment of such fines.[3] Scofield v. National Labor Relations Board, 394 U.S. 423, 426, 89 S.Ct. 1154, 1157, 22 L.Ed.2d 385, 391 (1969); National Labor Relations Board v. Allis-Chalmers Manufacturing Co., 388 U.S. 175, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967); Local 165, International Brotherhood of Electric Workers, AFL-CIO v. Bradley & Stankos-key, 149 Ill.App.3d 193, 102 Ill.Dec. 20, 499 N.E.2d 577 (1986); Communication Workers of America, Local 6003 v, Jackson, 516 P.2d 529 (Okl.1973); Walsh v. Communications Workers of America, Local 2336, 259 Md. 608, 271 A.2d 148, 149 (1970); United Automobile Workers v. Natzke, 36 Wis.2d 237, 153 N.W.2d 602 (1967). Indeed, this Court has recognized state court subject matter jurisdiction of actions between labor unions and their members wherein enforcement of the union’s internal rules and regulations was sought. Lowery v. International Brotherhood of Boilermakers, Iron Shipbuilders and Helpers of America, 241 Miss. 458, 468-49, 130 So.2d 831, 834 (1961); United Brotherhood of Carpenters & Joiners of America v. Barr, 217 Miss. 360, 368, 64 So.2d 150, 153 (1953).
IV.
I am impressed by the fact that the judiciary of at least five other states has been called upon to grapple with quite similar actions brought by other locals of the same union, Communication Workers of America, and, without exception, the right of the CWA local to enforce payment of a fine levied against a member who crossed the picket line during a strike has been upheld. Jost v. Communications Workers of America, Local 9408, 13 Cal.App.3d Supp. 7, 91 Cal.Rptr. 722 (1970); Communication Workers of America, Local 5701 ¶. Drake, 487 N.E.2d 821 (Ind.App.1985); Walsh v. Communications Workers of America, Local 2336, 259 Md. 608, 271 A.2d 148 (1970); Communications Workers of America, Local 6003 v. Jackson, 516 P.2d 529 (Okl.1973); and Communication Workers of America, Local 9206 v. Malo-ney, 259 Or. 470, 486 P.2d 1275 (1971). The Indiana case arose out of the self-same August 1983 nationwide Bell System strike.[4] Communication Workers of *788 America, Local 5701 v. Drake, 487 N.E.2d at 822.
In the California, Indiana, Maryland and Oklahoma cases, the reported opinions make clear that the language of the CWA Constitution under consideration was identical to that before this Court this day. See Jost v. Communication Workers of America, Local 0408, 91 Cal.Rptr. at 723; Communication Workers of America, Local 5701 v. Drake, 487 N.E.2d at 822; Walsh v. Communication Workers of America, Local 2336, 271 A.2d at 149; Communication Workers of America, Local 6003 v. Jackson, 516 P.2d at 531. In three of these cases, fines were upheld which were slightly in excess of wages earned by the worker/union member while violating the strike order. Communication Workers of America, Local 5701 v. Drake, 487 N.E.2d at 823 (worker earned $832.77; was fined $857.77); Walsh v. Communication Workers of America, Local 2336, 271 A.2d at 149, 151 (workers earned $400.00; was fined $500.00); Communication Workers of America, Local 6003 v. Jackson, 516 P.2d at 533 (worker earned $267.00; was fined $274.52).
The Communication Workers of America is a national labor union having many thousands of members in every one of the fifty states. The cases cited above make it clear that the language in the CWA Constitution authorizing imposition of fines for strike breaking has been in its present form for at least fifteen years. Until today no case questions a CWA local’s authority to impose or seek judicial enforcement of a reasonable fine because the union had not in advance “adopted a schedule of maximum fines” or for any of the other reasons, real or imagined, advanced by the majority. We are concerned here with a union constitution which affects individuals in all of the fifty states. There is good reason to afford it a uniform construction or, conversely, we should refrain from constructions inimical to uniformity, absent implication of some strong interest peculiar to this state. No such Mississippi interest has been identified in the majority opinion, in the briefs or arguments of the parties, nor in the record of the proceedings below.
In upholding the judgment of the Circuit Court and applying the Multiple Listing rationale to the case at bar, we are in practical effect stripping Local 10517 and all other CWA Locals in Mississippi of their authority to impose and collect fines of and from members who violate Union rules. Under federal law CWA Locals have precisely this authority, and such authority is regarded as vital to a union’s viability. See National Labor Relations Board v. Allis-Chalmers Manufacturing Co., 388 U.S. 175, 183-84, 87 S.Ct. 2001, 2008, 18 L.Ed.2d 1123, 1129-30 (1967).
V.
Multiple Listing Service of Jackson, Inc. v. Century 21 Cantrell Real Estate, Inc., 390 So.2d 982, 985-86 (Miss.1980) is a troublesome case. The majority in part considers it controlling precedent. Why the majority is wrong in this regard should be considered with some care.
Multiple Listing Service of Jackson, Inc. (MLS) was a non-profit, private, professional association in which membership was voluntary. Century 21 Cantrell was a member of MLS. Cantrell materially altered a withdrawal notice in violation of the MLS Code of Ethics. Article IV, Section 1(a) provided sanctions in the event of such violations including reprimand, suspension or expulsion and in the end-provided
The Board of Directors, if it should see fit, may grant the option of receiving a monetary fine in lieu of suspension. All penalties are to be prescribed for each individual offense by the Board of Directors of MLS. [Emphasis supplied]
390 So.2d at 985.
The MLS Board imposed a $300.00 fine on Cantrell for its violation. This Court held the fine unlawfully imposed. The reasons offered were twofold: MLS did not have “a schedule of maximum fines that may be imposed to which schedule each member has agreed to be bound by joining the association.” 390 So.2d at 986. The fine was “arbitrary” in the sense that there was no evidence showing a rational basis upon which the amount was established. 390
*789 So.2d at 986. No prior Mississippi law is relied upon in Multiple Listing. Rather, the court cited and relies upon a 1919 decision of a New York intermediate court of appeals, American Men’s and Boy’s Clothing Manufacturers Association v. Proser, 190 A.D. 164, 179 N.Y.S. 207 (1919).[5] Second, the opinion relies upon the equal protection clause of the Fourteenth Amendment of the United States Constitution, although it cites no federal or state construction of that clause. 390 So.2d at 986. Multiple Listing should not control the case at bar. The fact that it relies on no Mississippi authority suggests the absence of any interest of this state in disrupting the uniformity of construction of the CWA National Constitution. Moreover, we imposed no requirement of a pre-assessment schedule of fees in the analogous context of a homeowners association. [6] Perry v. Bridgetown Community Association, Inc., 486 So.2d 1230,1234 (Miss.1986); William W. Bond, Jr. & Associates, Inc. v. Lake O’The Hills Maintenance Association, 381 So.2d 1043, 1045 (Miss.1980). These cases substantially vitiate the status of Multiple Listing as announcing a rule of general application to all private or voluntary associations. Beyond that, the $300.00 fine imposed in Multiple Listing was without rational basis, at least insofar as the opinion reflects. To the contrary, the fines in the case at bar were determined by reference to the earnings of the workers during the period of time they violated the strike order but not past the point of their resignation, from the union. The Maryland and Oklahoma cases cited above convince me that this is a fair and rational method of assessing a fine.
In the end, the workers do not seriously argue that the method by which their fines were assessed are arbitrary or unreasonable. Rather, they rely upon the rather technical argument that there was in effect no before-the-fact schedule of maximum fines. To be sure, Multiple Listing holds this a fatal vice, and does so upon the authority of the equal protection clause of the Fourteenth Amendment to the United States Constitution. No case from the United States Supreme' Court of any other federal court is cited, however, giving the Fourteenth Amendment this construction. Indeed, little familiarity with prevailing equal protection jurisprudence is required to make clear that Multiple Listing ⅛ purported construction of the equal protection clause is simply wrong.[7]
To establish a Fourteenth Amendment claim, equal protection variety or otherwise, there must be state action. Blum v. Yaretsky, 457 U.S. 991, 1003-12, 102 S.Ct. 2777, 2785-90, 73 L.Ed.2d 534, 545-51 (1982); Rendell-Baker v. Kohn, 457 U.S. 830, 837-43, 102 S.Ct. 2764, 2769-72, 73 L.Ed.2d 418, 425-29 (1982). There was no state action in Multiple Listing. It may be too late to undo that mistake, but there is no reason to repeat it. CWA Local 10517 is a private association, in no way an arm of the state.
Even if the state action hurdle be surmounted via the local’s judicial enforcement efforts, cf. Tinnin v. First Bank of Mississippi, 502 So.2d 659, 666 (Miss.1987), these union members must show invidious discrimination amongst persons without any rational basis therefor. These eleven Union members do not constitute a discrete class, precluding strict scrutiny review. Their fines were not arbitrarily imposed. Indeed their violation of the strike order is a more than rational basis for treating them differently from other Union members. I dare say that there is not a single *790 reported case, save perhaps Multiple Listing, which would afford these union members relief on a Fourteenth Amendment equal protection theory. See, e.g., Williamson v. Lee Optical of Oklahoma, Inc., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).
In the end, no one has asked that we overruled Multiple Listing and, accordingly, I would not consider that proposition. I would merely hold that its force as precedent is not so strong as to prevent CWA Local 10517 from exercising prerogatives clearly available to it under this state’s law of contracts and voluntary associations and enforcing provisions of the CWA Constitution as those provisions have been enforced in other states.
VI.
There is more. Beyond its refusal to follow settled principles of construction of union disciplinary rules, and beyond its fostering an untenable reading and application of the Fourteenth Amendment, the majority ignores the procedural posture of these cases — the CWA local’s suits were all dismissed on summary judgment.
The majority reasons that the CWA Constitution and By-Laws were not worded with sufficient clarity to bring home to the union members that they were subject to fines for crossing the picket line. The matter of judicial enforcement is also regarded too vague. Setting aside for the moment that no other court has had these difficulties in reading the plain wording of the CWA Constitution and By-Laws, we find the majority here resolving a question of fact. Whether a given union member understood that the CWA Constitution and By-Laws authorized imposition and enforcement of fines for crossing picket lines is a question of fact. In contract parlance, it is a matter of whether in fact the minds met. The presence of such questions normally precludes summary judgment. But here the majority resolves the question of fact and does so against —not in favor of —the party against whom summary judgment was sought. This is bizarre.
The majority finds an “ambiguity of meaning” within the operative union rules. If that be the case, established rules regarding summary judgment proceedings require denial of the motion in favor of plenary trial on the merits. Briscoe’s Foodland, Inc. v. Capital Association, Inc., 502 So.2d 619, 621 (Miss.1986); Busching v. Griffin, 465 So.2d 1037, 1042 (Miss.1985); Dennis v. Searle, 457 So.2d 941, 945 (Miss.1984); Biggers v. Fox, 456 So.2d 761 (Miss.1984). Those same rules require reversal where the trial judge has summarily resolved the ambiguity, explicitly or as here implicitly. What else is there to say except to note the obvious, that here again the majority marches in reverse, 180 degrees opposite the settled law.
I dissent.
ROY NOBLE LEE, P.J., and PRATHER and SULLIVAN, JJ., join in this opinion.
ANDERSON, J., not participating.

. That these criteria were employed by the Local Trial Court is established by affidavit. Since the matter was before the Circuit Court on motions for summary judgment filed against Local 10517, the contents of this uncontradicted affidavit must be taken as true. Hill v. Consumer National Bank, 482 So.2d 1124, 1229 (Miss. 1986); Smith v. First Federal Savings & Loan Ass’n., 460 So.2d 786, 792 (Miss. 1984).

. See footnote 1, supra.

. Judicial enforcement of union fines is hardly "a recent innovation but has been known at least since 1867.” National Labor Relations Board v. The Boeing Company, 412 U.S. 67, 75, 93 S.Ct. 1952, 1957, 36 L.Ed.2d 752, 758-59 (1973); National Labor Relations Board v. Allis-Chalmers Manufacturing Co., 388 U.S. 175, 182 fn. 9, 87 S.Ct. 2001, 2007 fn. 9, 18 L.Ed.2d 1123, 1129 (1967). State court enforcement was recognized well over a century ago in Master Stevedores’ Assn. v. Walsh, 2 Daly 1 (N.Y.1867). None of the union member appellees here questions the authority of the courts of this state to enforce union fines, nor did the Circuit Court.

. Local 165, International Brotherhood of Electrical Workers, AFL-CIO v. Bradley & Stankos-key, 149 Ill.App.3d 193, 102 Ill.Dec. 20, 499 N.E.2d 577 (1986), reaching a result comparable to that I would have us announce this day, and upon similar reasoning, also arose out of the August 1983 nationwide Bell System strike.

. My research indicates that Multiple Listing is the only case which has ever cited and relied upon the 1919 New York case.

. See also Sokol Camp Association of Omaha v. Velehradsky, 209 Neb. 276, 307 N.W.2d 510 (1981), where the Supreme Court of Nebraska found no impediment to a private, voluntary association’s assessment of an initiation fee in the fact that neither the articles of incorporation nor the by-laws set forth any schedule of fees nor the maximum fee that might be assessed. 307 N.W.2d at 511-12.

.If anything Multiple Listing presents a due process problem, not an equal protection one. To decide Multiple Listing or this case on equal protection grounds would be like trying to employ geometry principles to solve an algebra problem.